UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-21781-DPG

MARTHA CUEVAS,

    Plaintiff,

v.

SWIFT AIR, LLC, a foreign limited liability company and AEROTECH MIAMI, INC. d/b/a/ IAERO AIRWAYS, a Florida corporation for profit,

    Defendants.

Assigned to the Honorable
Judge Darrin P. Gayles

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
ITS PENDING MOTION TO DISMISS THE COMPLAINT, OR IN THE
ALTERNATIVE, MOTION TO COMPEL ARBITRATION**

Pursuant to Local Rule 7.2, Defendant Swift Air, LLC ("Swift Air") and Defendant Aerotech Miami, Inc. ("Aerotech") (together herein, "Defendants"), through counsel undersigned, hereby file this Memorandum in Support of its Motion to Dismiss the Complaint filed by Plaintiff Martha Cuevas, or in the alternative, Motion to Compel Arbitration (herein, "Motion"), which Defendants previously filed in the state court prior to removal.[1] Defendants respectfully request that the Court dismiss the Complaint because (i) Plaintiff failed to perfect timely service of process upon Defendants, and (ii) the matter is preempted by federal law. In the alternative, Defendants respectfully request that the Court stay the matter and compel arbitration pursuant to a valid and enforceable arbitration agreement between the parties.

---

[1] Defendants filed a copy of the Motion and corresponding exhibits with Defendants' Notice of Removal (Doc. 1-2, Pgs. 23-38). For convenience, a copy also is attached hereto as Exhibit A.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

I. **Factual and Procedural Background.**

In approximately August 2017, Swift Air hired Plaintiff to work as a flight attendant. *See* Complaint, Doc. 1-2, Pg. 17, ¶ 6. Plaintiff accepted the terms of the employment, including but not limited to an Arbitration Agreement. *See* Arbitration Agreement, attached as Exhibits B and C to the Motion, and signed by Plaintiff on August 29, 2017.[2] The Arbitration Agreement compelled Plaintiff and Swift Air to arbitrate any and all "claims, controversies, or disputes that may arise out of the employment relationship" with Swift Air[3], pursuant to the rules of the American Arbitration Association. *See* Motion, Ex. C, internal page 1. More specifically, the claims covered by the Arbitration Agreement include, but are not limited to:

> …[A]ny claim or controversy arising out of or relating to, any provision of this Agreement, or the breach thereof, and any claim or controversy arising out of the Employee's employment or termination thereof, including but not limited to claims allegedly resulting from: wages or other compensation due; breach of any contract or covenant; whistle blowing; tort; or violation of any applicable federal, state, or other government constitution, statute, ordinance, regulation, or public policy…

The Arbitration Agreement does not apply to or cover claims for:

> …[W]orkers' compensation or unemployment compensation benefits; claims for injunctive and/or other equitable relief for restrictive covenant or intellectual property violations, or claims based upon an employee pension or benefit plan that either (1) contains an arbitration or other non-judicial resolution procedure, in which case the provisions of such plan shall apply, or (2) is underwritten by a commercial insurer which decides claims. If either the Company or the Employee has more than one claim against the other, one or more of which is not covered by this Agreement, such claims shall be determined separately in the appropriate forum for resolution of those claims.

---

[2] Defendants attached Plaintiff's actual signature page as Exhibit B, and the first three pages of the then-extant Arbitration Agreement in Plaintiff's employee file as Exhibit C.

[3] The Arbitration Agreement defines Swift Air to include all of its subsidiaries and affiliated entities, including "all former, current, and future officers, directors, and employees of all such entities, in their capacity as such or otherwise, all benefit plans and their sponsors, fiduciaries, administrators, affiliates and agents, in their capacity as such and otherwise, and all successors and assigns of any of them". *See* Motion, Ex. C., internal page 1.

*See* Motion, Ex. C, internal page 1.

The Arbitration Agreement states, in large, capitalized font, that "**EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES THAT IT HAS CAREFULLY READ THIS AGREEMENT, [AND] THAT IT UNDERSTANDS ITS TERMS…**". *See* Motion, Ex. C, internal page 4. All four pages of the Arbitration Agreement are clearly labeled "**ARBITRATION AGREEMENT**". *See* Motion, Ex. C, internal pages 1-4.

In 2019, Swift Air was rebranded as iAero Airways. *See* Complaint, Doc. 1-2, ¶ 4 (alleging iAero Airways is the successor in interest to Swift Air). Plaintiff's employment ended in July 2019. *See* Complaint, Doc. 1-2, Pg. 17, ¶ 13.[4] Following her separation from employment, and despite the Arbitration Agreement, Plaintiff filed the instant Complaint against Defendants alleging causes of action for: (i) alleged violations of the Americas with Disabilities Act, 42 U.S.C. § 12101; and (ii) alleged disability discrimination in violation of Florida's Civil Rights Act, Fla. Stat. 760.10. *See* Complaint, Doc. 1-2, Pg. 17, ¶¶ 15-26. The allegations supposedly supporting these claims focus exclusively on Plaintiff's employment and the events leading up to and including Plaintiff's separation from employment. *See* Complaint, Doc. 1-2, Pg. 17, ¶¶ 6-14.

Plaintiff filed the Complaint on September 29, 2021. On October 18, 2022, defense counsel reached out to Plaintiff's counsel, verifying whether Plaintiff initiated service of process on Defendants. Plaintiff's counsel confirmed service was not initiated yet and requested whether Defendants would agree to accept service. On October 19, 2021, defense counsel confirmed that Defendants agree to accept service by mail. Plaintiff's counsel never responded. One month later, on November 22, 2021, defense counsel followed up, inquiring when Defendants could expect

---

[4] Defendants dispute Plaintiff's assertions regarding the alleged reason for the cessation of employment. However, for purposes of the Motion, the dispute is irrelevant.

service of process to begin. Plaintiff's counsel never responded. On November 29, 2021, defense counsel again inquired about service. *See* relevant portions of email thread between counsel, attached as Exhibit A to the Motion. Despite defense counsel extending repeated reminders as a professional courtesy, Plaintiff's counsel never responded, and Plaintiff never initiated service of process. Instead, on May 9, 2022, approximately 3.5 months after the service deadline lapsed, and almost seven months after Defendants initially agreed to accept service by mail, Plaintiff filed a Motion for Extension of Time to Serve Defendants. *See* Motion for Extension of Time, Doc. 1-2, Pgs. 21-22. Plaintiff did not file a memorandum in support and the Motion for Extension was pending with the state court at the time of removal.

## II.     Law and Argument.

### A. Plaintiff failed to perfect timely service of process upon Defendants.

First and foremost, the Court should dismiss the Complaint for failure to perfect timely service of process upon Defendants. Pursuant to Florida Rules of Civil Procedure, Rule 1.070(j), a plaintiff must serve the initial process upon a defendant within 120 days after filing the initial pleading. The court may extend the time for service "…if the plaintiff shows good cause or excusable neglect for the failure…" to serve within this 120-day period. *See Powell v. Madison County Sheriff's Dept.,* 100 So.3d 753, 754-755 (Fla. 1st DCA 2012) (affirming dismissal for failure to timely serve, even when statute of limitations will bar further action, where trial court utilized its discretion and properly considered factors pertaining to such dismissal). If neither good cause nor excusable neglect are shown, a trial court may use its discretion to dismiss the matter without prejudice. *See Pixton v. Williams Scotsman,* 924 So.2d 37, 39-40 (Fla. 5th DCA 2006). Where an attorney is involved in the alleged misconduct, courts consider the *Kozel* analysis in determining whether dismissal is warranted, which includes:

4

> …[W]hether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration.

*See Kozel v. Ostendorf*, 629 So.2d 817, 818 (Fla. 1993); *see also* Pixton, 924 So.2d at 40.

Here, Plaintiff filed the Complaint on September 29, 2021, with the service deadline of January 27, 2022. Despite repeated reminders extended to Plaintiff's counsel, Plaintiff never initiated service of process. Instead, on May 9, 2022, approximately 3.5 months after the service deadline lapsed, and almost seven months after Defendants initially agreed to accept service by mail, Plaintiff filed a Motion for Extension of Time to Serve Defendants. The Motion for Extension of Time failed to provide *any* justification or explanation whatsoever for the delay and noncompliance, let alone good cause or excusable neglect. More specifically, the Motion for Extension failed to notify the Court that Defendants agreed to accept service by mail almost seven months previously, that defense counsel repeatedly reminded Plaintiff's counsel to serve the Complaint, and that Plaintiff's counsel failed to respond. Notably, Plaintiff also failed to serve the Motion for Extension of Time on defense counsel or notify them of the pending request, despite being aware of the representation. Plaintiff never filed a memorandum in support of his Motion for Extension of Time and the motion was still pending in the state court at the time of removal.

Because counsel offered no justification whatsoever for the requested extension, Defendants do not know whether Plaintiff, her counsel, or both were involved in the failure to timely serve. However, upon information and belief, the noncompliance was not a result of inexperience of counsel, who, according to the Florida State Bar, is a shareholder/partner in his firm and admitted to practice in Florida for almost ten years. However, the delay unnecessarily

5

prejudiced Defendants, who expended time and resources, first, in seeking clarification on the status of service, which Plaintiff's counsel repeatedly refused to provide, and second, in defending against the untimely service.

Timely service was not perfected, and Plaintiff failed to receive an extension. Defendants respectfully request that the Court exercise its discretion to dismiss the Complaint under Rule 1.070(j).

### B.  The matter is preempted by federal law.

The Court must dismiss the Complaint because Plaintiff's disability discrimination claims arise out of issues of aviation safety, and in particular, whether a flight attendant could safely perform duties required of her position, and therefore are preempted by the Federal Aviation Act. *See* Fed. Aviation Act of 1958, Pub. L. No. 85-726, 52 Stat. 971 (1938).  Congress passed the Federal Aviation Act in order to create a national system of aviation regulation. *See Ventress v. Japan Airlines*, 747 F.3d 716, 721 (9th Cir. 2014).  Congress intended to hold air carriers to a single system of regulation to prevent an otherwise patchwork and unworkable system of state laws and rules.  *See French v. Pan Am Express, Inc.,* 869 F.2d 1, 6 (1st Cir. 1989).   When Congress passed the Federal Aviation Act, it intended to establish *field* preemption, the most expansive form of preemption, with respect to aviation safety. *See Ventress*, 747 F.3d at 722-723.  As a result, laws and claims that touch on questions of aviation safety are preempted. Plaintiff's disability discrimination claims are preempted to the extent that they intertwine with and/or substantially depend upon the application or interpretation of aviation safety and requirements for aviation employees, including, by way of example only, whether a flight attendant could safely perform required duties. *Cf. Ventress*, 747 F3d at 722-723; *Cf. Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-1034 (9th Cir. 2016) (LMRA preemption where claim based solely on a CBA

or is "substantially dependent" on a CBA such that court must interpret CBA to resolve claim); *see also* Complaint, Doc. 1-2, Pg. 17, ¶¶ 6, 7, 11.

Building on the Federal Aviation Act, Congress also passed the Federal Aviation Deregulation Act, 49 U.S.C. § 40101 et seq., as a scheme that would broadly preempt any state laws that affect an airline's provision of services. *See, e.g., Hodges v Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc). More specifically, the ADA preemption provision states that: "a State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier". *See Tucker v. Hamilton Sundstrand Corp, Inc.,* 268 F.Supp.2d 1360, 1363-1364 (S.D. Fla. 2003) (Aviation Deregulation Act preempted claim under Florida Whistleblower Act), *citing* 49 U.S.C. § 41713(b)(1). The Supreme Court has outlined a two part test for ADA preemption over a state claim, including: (i) whether the claim is "related to" prices, routes, or services of an air carrier; and (ii) whether the claim constitutes an enactment or enforcement of state law. The Supreme Court has given the term "related to" broad meaning. *Id. citing Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 390 (1992) (holding state consumer protection laws prohibiting deceptive advertisements preempted because it relates to price, route, or service of air carrier). Indeed, to be preempted, "the laws do not have to actually prescribe rates, routes, or services or be specifically addressed to the airline industry, or be inconsistent with federal law", rather they need to be merely "connected with" airline rates, routes, or services, even if only indirectly. *Id.* at 1364, *citing Morales*, 504 U.S. at 375, 385-387.

Here, while the Florida state law does not specifically prescribe the rates, routes, or services or specifically address the airline industry, Plaintiff's claims are connected to the services and routes, if only indirectly. Plaintiff alleges she was hired as a flight attendant, and that, even though

she admittedly could not fly or perform any in-flight tasks, she could perform her "regular job duties without issue". *See* Complaint, Doc. 1-2, Pg. 17, ¶¶ 6, 7, 11. Thus the claims directly relate to Plaintiff's physical capabilities as a flight attendant and what services flight attendants are required to perform, and indirectly relate to routes, which would be interrupted and need adjusting and/or re-staffing given the restrictions. *See Parise v. Delta Airlines, Inc.,* 141 F.3d 1463, 1466-1468 (11th Cir. 1998), *citing Belgard v. United Airlines,* 857 P.2d 467 (Colo. App. 1992) (state law on disability discrimination preempted because physical capabilities of flight personnel "related to" services rendered by airline); *see also Fitzpatrick v. Simmons Airlines, Inc*., 218 Mich. App. 689 (Mich. 1996) (per curiam), *app. denied,* 570 N.W.2d 785 (Mich. 1997) (state law civil rights statute preempted as relating to services of an air carrier where employee alleged he was separated by airline because he did not meet height and weight standards).[5] Plaintiff's claims are preempted and must be dismissed.

### C. The parties agreed to arbitrate the matter.

In the alternative, should the Court elect not to dismiss the Complaint for failure to perfect timely service of process and/or federal preemption – which it should – Defendants respectfully request that the Court stay the matter and compel arbitration. When considering whether to compel arbitration, courts analyze three elements under both federal law and the Florida Arbitration Code[6]:

---

[5] In *Parise*, the Eleventh Circuit held that an age discrimination claim was not preempted and distinguished it from *Fitzpatrick* and *Belgard* because in *Parise*, the defense, but not the claim itself, related to airline safety. *See Parise*, 141 F.3d at 1467. Here, Plaintiff's claim mirrors *Belgard,* with her physical capabilities as a flight attendant and the preempted state statue directly at issue on the face of the Complaint, and thus should be preempted.

[6] The Arbitration Agreement does not specify a substantive law, and instead clarifies that arbitration should be adjudicated in accordance with the law which would be applied by an Arizona district court, *see* Motion, Ex. C., internal page 3, which should be decided by the arbitrator after conducting its own choice of law analysis. Given that Plaintiff allegedly resides in Florida and that Swift Air changed its headquarters from Arizona to North Carolina (operational) and Florida (corporate) as part of an acquisition in 2019, *see* Complaint, Doc. 1-2, Page 16, ¶¶ 2-4, Defendants

(i) whether a valid written agreement to arbitrate exists; (ii) whether an arbitral issue exists; and (iii) whether movant waived the right to arbitrate by actively participating in the lawsuit. *See Laney v. Austin*, No. 3:19-cv-1278-TJC-JRK, 2021 WL 825088, *6 (M.D. Fla. Mar. 4, 2021) (compelling arbitration between employee and employer where employer underwent extensive reorganization, but agreement included successors and assigns of company); *see also O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.,* 944 So.2d 181, 185-187 (Fla. 2006) (compelling arbitration under the Florida Arbitration Code).

Here, a valid, written agreement exists to arbitrate, which Plaintiff signed at the commencement of employment. The Arbitration Agreement requires the arbitration of claims arising out of Plaintiff's employment or termination, including any torts or violations of any applicable law, regulation, or public policy. *See* Motion, Ex. C, internal page 1. The claims asserted in the Complaint arise directly from her employment and cessation thereof, and alleged violations of state and federal regulations. *See* Complaint, Doc. 1-2, Pg. 17, ¶¶ 6-14. And Defendants preserved their right to arbitrate by promptly moving to compel arbitration, before filing an answer or engaging in the litigation process. Accordingly, the parties should be compelled to arbitrate Plaintiff's claims.

Yet, even if Plaintiff were able to cobble together some question with respect to applicability or enforceability of the Arbitration Agreement (and Defendants respectfully submit that no such question exists), the parties agreed to commit to the arbitrator all questions of applicability or enforceability, and thus arbitration is still required. *See* Motion, Ex. C, internal page 3. When parties clearly and unmistakably agree to arbitrate gateway issues, the district courts should compel arbitration. *See Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1271 (11th Cir. 2017);

---

cite Florida law in support of this Motion to Compel; however, arbitration also is appropriate under North Carolina's Revised Uniform Arbitration Act. *See* N.C.G.S. § 1-569.6-1-596.7.

*see also O'Keefe Architects, Inc.,* 944 So.2d at 186-187 (discussing precedent of placing gateway issues in hands of arbitrator). Here, the Arbitration Agreement clearly delegated the questions of arbitrability and enforceability to an arbitrator by stating that "the arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement". *See* Motion, Ex. C, internal page 3. Additionally, the parties agreed that the Employment Arbitration Rules and Mediation Procedures of the AAA apply, *see* Motion, Ex. C, internal page 2, and the AAA Employment Arbitration Rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* AAA Employment Rule 6(a) (2016).

Thus, the parties agreed to arbitrate not only the claims encompassed in this litigation, but also gateway issues, if any. The Court must stay the litigation and compel arbitration.

### III. Conclusion.

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint for failure to timely perfect service and/or federal preemption. In the alternative, Defendants respectfully request that the Court stay the matter and compel arbitration.

DATED: June 23, 2022

        Respectfully submitted,

By: */s/ Daniel L. Abbott*
    Daniel L. Abbott, Esq.
    Florida Bar No. 767115
    dabbott@wsh-law.com
    Weiss Serota Helfman Cole & Bierman, P.L.
    200 East Broward Boulevard, Suite 1900
    Fort Lauderdale, Florida 33301
    Telephone: (954) 763-4242
    Telecopier: (954) 764-7770

*Counsel for Defendants*