IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2021-022220-CA-01

MARTHA CUEVAS,

       Plaintiff,

v.

SWIFT AIR, LLC, a foreign limited liability company and AEROTECH MIAMI, INC. d/b/a/ IAERO AIRWAYS, a Florida corporation for profit,

       Defendant.

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, DEFENDANTS' MOTION TO COMPEL ARBITRATION

Defendant Swift Air, LLC ("Swift Air") and Defendant Aerotech Miami, Inc. ("Aerotech") (together herein, "Defendants"), through counsel undersigned, hereby file this Motion to Dismiss the Complaint filed by Plaintiff Martha Cuevas, or in the alternative, Motion to Compel Arbitration. Defendants respectfully request that the Court dismiss the Complaint because (i) Plaintiff failed to perfect timely service of process upon Defendants, and (ii) the matter is preempted by federal law. In the alternative, Defendants respectfully request that the Court stay the matter and compel arbitration pursuant to a valid and enforceable arbitration agreement between the parties.

First and foremost, the Court must dismiss the Complaint for failure to perfect timely service of process upon Defendants. Pursuant to Florida Rules of Civil Procedure, Rule 1.070(j), plaintiff must serve the initial process upon a defendant within 120 days after filing the initial pleading. The court may extend the time for service "…if the plaintiff shows good cause or excusable neglect for the failure…" to serve within this 120-day period. Here, Plaintiff filed the

54907418.2

Complaint on September 29, 2021, with the service deadline of January 27, 2022. On October 18, 2022, defense counsel reached out to Plaintiff's counsel, verifying whether Plaintiff initiated service of process on Defendants. Plaintiff's counsel confirmed service was not initiated yet and requested whether Defendants would agree to accept service. On October 19, 2021, defense counsel confirmed that Defendants agree to accept service by mail. Plaintiff's counsel never responded. One month later, on November 22, 2021, defense counsel followed up, inquiring when Defendants could expect service of process to begin. Plaintiff's counsel never responded. On November 29, 2021, defense counsel again inquired about service. *See* relevant portions of email thread between counsel, attached hereto as Exhibit A. Despite defense counsel extending repeated reminders as a professional courtesy, Plaintiff's counsel never responded, and Plaintiff never initiated service of process. Instead, on May 9, 2022, approximately 3.5 months after the service deadline lapsed, and almost seven months after Defendants initially agreed to accept service by mail, Plaintiff filed a Motion for Extension of Time to Serve Defendants. *See* filing # 149224700. The Motion for Extension of Time fails to provide any explanation or reason whatsoever for the delay and failure to serve, let alone *good* cause or excusable neglect. More specifically, the Motion for Extension fails to notify the Court that Defendants agreed to accept service by mail almost seven months previously, that defense counsel repeatedly reminded Plaintiff's counsel to serve the Complaint, and that Plaintiff's counsel ignored the emails and failed to respond. Notably, Plaintiff also failed to serve the Motion for Extension of Time on defense counsel or in any way notify them of the pending request, despite being well-aware of the representation. Timely service was not perfected, and Plaintiff failed to receive an extension. Defendants respectfully request that the Court dismiss the Complaint under Rule 1.070(j).

Second, Plaintiff's discrimination claims arise out of issues of aviation safety, and therefore

are preempted by the Federal Aviation Act. *See* Fed. Aviation Act of 1958, Pub. L. No. 85-726, 52 Stat. 971 (1938). Congress passed the Federal Aviation Act in order to create a national system of aviation regulation. *See Ventress v. Japan Airlines*, 747 F.3d 716, 721 (9th Cir. 2014). Congress intended to hold air carriers to a single system of regulation to prevent an otherwise patchwork and unworkable system of state laws and rules. *See French v. Pan Am Express, Inc.,* 869 F.2d 1, 6 (1st Cir. 1989). When Congress passed the Federal Aviation Act, it intended to establish *field* preemption, the most expansive form of preemption, with respect to aviation safety. *See Ventress*, 747 F.3d at 722-723. As a result, laws and claims that touch on questions of aviation safety are preempted. Plaintiff's discrimination claims are preempted to the extent that they intertwine with and/or substantially depend upon the application or interpretation of aviation safety and requirements for aviation employees. *Cf. Ventress*, 747 F3d at 722-723; *Cf. Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-1034 (9th Cir. 2016) (LMRA preemption where claim based solely on a CBA or is "substantially dependent" on a CBA such that court must interpret CBA to resolve claim).

Building on the Federal Aviation Act, Congress also passed the Federal Aviation Deregulation Act, 49 U.S.C. § 40101 et seq., as a scheme that would broadly preempt any state laws that affect an airline's provision of services. *See, e.g., Hodges v Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc). The reasoning underlying the statute is unassailable—air carriers cannot possibly do business flying over all 50 states while being subjected to potentially 50 different regulatory and tort schemes. To illustrate, the Eighth Circuit held that a flight attendant's whistleblower state law claim was preempted by the Act where the plaintiff asserted that she was discharged for exposing violations of the Federal Aviation Regulations. *See Botz v. Omni Air International*, 286 F.3d 488, 489-94 (8th Cir. 2002). Here, Plaintiff similarly asserts a state law

claim regarding her discharge, which should be preempted by the Act.

In the alternative, should the Court elect not to dismiss the Complaint for failure to perfect timely service of process and/or federal preemption – which it should – Defendants respectfully request that the Court stay the matter and compel arbitration. On August 29, 2017, Plaintiff entered into a valid and enforceable Arbitration Agreement. *See* signature page of Plaintiff's Arbitration Agreement, attached hereto as Exhibit B. The Arbitration Agreement specifically requires the arbitration of claims arising out of Plaintiff's employment or termination, including claims for wages, breaches, torts, or violations of any applicable law, regulation, or public policy.[1] The claims asserted in the Complaint arise directly from Plaintiff's employment and cessation thereof. Accordingly, the parties should be compelled to arbitrate the claims.

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint for failure to timely perfect service and/or federal preemption. In the alternative, Defendants respectfully request that the Court stay the matter and compel arbitration.

### CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2022, I electronically filed the foregoing Defendants' Motion to Dismiss the Complaint, or in the alternative, Motion to Compel Arbitration with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authored to electronically receive Notices of Electronic Filing.

DATED: May 31, 2022.

---

[1] Swift Air attaches Plaintiff's actual signature page as Exhibit B, and the first three pages of the then-extant Arbitration Agreement in Plaintiff's employee file as Exhibit C.

54907418.2

Respectfully submitted,

By: */s/Daniel L. Abbott*
    Daniel L. Abbott, Esq.
    Florida Bar No. 767115
    dabbott@wsh-law.com
    Weiss Serota Helfman Cole & Bierman, P.L.
    200 East Broward Boulevard, Suite 1900
    Fort Lauderdale, Florida 33301
    Telephone: (954) 763-4242
    Telecopier: (954) 764-7770
    *Counsel for Defendants*

    John Alan Doran, Esq.
    Arizona Bar No. 012112
    (Motion for Pro Hac Vice forthcoming)
    jdoran@shermanhoward.com
    Lori Wright Keffer, Esq.
    Arizona Bar No. 028144
    (Motion for Pro Hac Vice forthcoming)
    lkeffer@shermanhoward.com
    Sherman & Howard L.L.C.
    7033 East Greenway Parkway, Suite 250
    Scottsdale, Arizona 85254
    Telephone: (480) 624-2710
    Facsimile: (480) 624-2029
    *Counsel for Defendants*

## SERVICE LIST

### CIRCUIT CIVIL NO. CASE NO.: 2021-022220-CA-01

**Daniel L. Abbott, Esq.**
dabbott@wsh-law.com
**Brett J. Schneider, Esq.**
bschneider@wsh-law.com
Weiss Serota Helfman Cole & Bierman, P.L.
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, Florida 33301
Telephone: (954) 763-4242
Telecopier: (954) 764-7770
*Counsel for Defendants*

**John Alan Doran, Esq.**
(Pro Hac Vice forthcoming)
jdoran@shermanhoward.com
**Lori Wright Keffer, Esq.**
(Pro Hac Vice forthcoming)
lkeffer@shermanhoward.com
Sherman & Howard L.L.C.
7033 East Greenway Parkway, Suite 250
Scottsdale, Arizona 85254
Telephone: (480) 624-2710
Facsimile: (480) 624-2029
*Counsel for Defendants*


*Javier A. Basnuevo, Esq.*
basnuevo@robertspa.com
Roberts, P.A.
113 Almeria Avenue
Coral Gables, Florida 33134
Telephone: (305) 442-1700
Fax: (305) 442-2559
*Counsel for Plaintiff*

54907418.2

# EXHIBIT A

**EXHIBIT A**

**From:** Doran, John A. <jdoran@shermanhoward.com>
**Sent:** Monday, November 29, 2021 12:56 PM
**To:** 'Javier Basnuevo' <basnuevo@robertspa.com>; Keffer, Lori Wright <LKeffer@shermanhoward.com>
**Cc:** Hinkel, LoriAnn <lhinkel@shermanhoward.com>
**Subject:** RE: Cuevas v. Swift Air

Hello again, Javier. I know last week was probably hectic for most of us, so I'm just nudging you on the below email. I hope you had a great Thanksgiving.

**From:** Doran, John A.
**Sent:** Monday, November 22, 2021 12:36 PM
**To:** 'Javier Basnuevo' <basnuevo@robertspa.com>; Keffer, Lori Wright <lkeffer@shermanhoward.com>
**Cc:** Hinkel, LoriAnn <lhinkel@shermanhoward.com>
**Subject:** RE: Cuevas v. Swift Air

Javier, I'm following up on this email. To our knowledge your client has not yet initiated the service by mail process. When can we expect your client to begin the process?

**From:** Doran, John A.
**Sent:** Tuesday, October 19, 2021 7:22 AM
**To:** 'Javier Basnuevo' <basnuevo@robertspa.com>; Keffer, Lori Wright <lkeffer@shermanhoward.com>
**Cc:** Hinkel, LoriAnn <lhinkel@shermanhoward.com>
**Subject:** RE: Cuevas v. Swift Air

Hi Javier. It looks like the summons just issued on the 13th. We will agree to service by mail to make things easy. Please let us know if that works for you.

**From:** Javier Basnuevo <basnuevo@robertspa.com>
**Sent:** Monday, October 18, 2021 11:02 AM
**To:** Doran, John A. <jdoran@shermanhoward.com>; Keffer, Lori Wright <LKeffer@shermanhoward.com>
**Cc:** Hinkel, LoriAnn <lhinkel@shermanhoward.com>
**Subject:** Re: Cuevas v. Swift Air

That's correct- I don't see that we've received an executed summons from the clerk yet. Will you agree to accept service?

Get Outlook for iOS

**From:** Doran, John A. <jdoran@shermanhoward.com>
**Sent:** Monday, October 18, 2021 1:59:44 PM
**To:** Javier Basnuevo <basnuevo@robertspa.com>; Keffer, Lori Wright <LKeffer@shermanhoward.com>
**Cc:** Hinkel, LoriAnn <lhinkel@shermanhoward.com>
**Subject:** RE: Cuevas v. Swift Air

1

Hi Javier.  I hope you are well.  I just wanted to confirm that your client has not formally served the Complaint on our client as of yet.  Would you please be so kind as to confirm this?

**From:** Javier Basnuevo <basnuevo@robertspa.com>
**Sent:** Wednesday, September 29, 2021 2:43 PM
**To:** Keffer, Lori Wright <LKeffer@shermanhoward.com>; Doran, John A. <jdoran@shermanhoward.com>
**Subject:** RE: Cuevas v. Swift Air

Lori,

      Sorry I was too busy to discuss the case prior to filing suit. For your convenience attached is a copy of the lawsuit just filed against Swift Air and Iareo Airways.  I'm happy to discuss the case with you at any time and hopefully we can bring the parties together for a Swift resolution of these issues.

Javier

**Javier A. Basnuevo**

**Roberts, P.A.**
**113 Almeria Ave**
**Coral Gables, FL 33134**
**Tel 305.442.1700**
**Fax 305.442.2559**
**www.robertspa.com**
**basnuevo@robertspa.com**

# EXHIBIT B

# EXHIBIT B



| | ARBITRATION AGREEMENT | FORM: HR-17<br>REV: ORIGINAL<br>DATE: 01-01-2017<br>PAGE 4 of 4 |
|---|---|---|

EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES THAT IT HAS CAREFULLY READ THIS AGREEMENT, THAT IT UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN EMPLOYEE AND COMPANY RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT THIS AGREEMENT HAS BEEN ENTERED INTO VOLUNTARILY AND NOT IN RELIANCE ON ANY OTHER PROMISES OR REPRESENTATIONS.

_____ Employee Initial                                          _____ Company Initial

EACH PARTY ALSO ACKNOWLEDGES THAT IT IS WAIVING THE RIGHT TO A TRIAL OF CLAIMS COVERED BY THIS AGREEMENT.

_____ Employee Initial                                          _____ Company Initial

EACH PARTY FURTHER ACKNOWLEDGES THAT IT HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL, AND HAS AVAILED ITSELF TO THAT OPPORTUNITY TO THE EXTENT IT WISHES TO DO SO.

_____ Employee Initial                                          _____ Company Initial


_____
Signature of Employee

MARTHA CUEVAS
Printed Name of Employee

8/29/17
Date


SWIFT AIR, LLC

By: _____

Date: _____

# EXHIBIT C

**EXHIBIT C**

|  | **ARBITRATION AGREEMENT** | FORM: HR-17<br>REV: ORIGINAL<br>DATE: 01-01-2017<br>PAGE 1 of 4 |
|---|---|---|

### ARBITRATION AGREEMENT

Swift Air, L.L.C., an Arizona based company, (hereinafter referred to as the "Company") and _____ (the "Employee"), a resident of the State of _____, hereby enter into this Arbitration Agreement ("Agreement") effective as of _____, 20___.

### RECITALS:

A. Company and Employee desire to enter into this Agreement governing any claims, controversies or disputes that may arise out of the employment relationship between Employee and Company.

B. The parties agree that all references to the "Company" in this Agreement shall include all of its subsidiary and affiliated entities, including all former, current and future officers, directors and employees of all such entities, in their capacity as such or otherwise; all benefit plans and their sponsors, fiduciaries, administrators, affiliates and agents, in their capacity as such and otherwise; and all successors and assigns of any of them.

NOW, THEREFORE, in consideration for each party's promise to resolve claims or controversies by arbitration in accordance with the provisions of this Agreement, rather than through the courts or other bodies, it hereby is agreed as follows:

### AGREEMENT TO ARBITRATE:

Employee and the Company hereby consent to the resolution of their dispute by binding arbitration of all claims or controversies for which a federal or state court would be authorized to grant relief, arising out of, relating to or associated with the employment relationship between Employee and the Company.

1. <u>Designated Claims.</u>  Claims covered by this Agreement include, but are not limited to, any claim or controversy arising out of or relating to, any provision of this Agreement, or the breach thereof, and any claim or controversy arising out of the Employee's employment or termination thereof, including but not limited to claims allegedly resulting from: wages or other compensation due; breach of any contract or covenant; whistle blowing; tort; or violation of any applicable federal, state or other governmental constitution, statute, ordinance, regulation, or public policy (collectively, all of the foregoing are referred to herein as "Claims"). The purpose and effect of this Agreement is to substitute arbitration as the forum for resolution of the Claims; all responsibilities of the parties under the statutes applicable to the Claims shall be enforced.

2. <u>Claims Not Covered by This Agreement.</u>  This Agreement does not apply to or cover claims for: workers' compensation or unemployment compensation benefits; claims for injunctive and/or other equitable relief for restrictive covenant or intellectual property violations; or claims based upon an employee pension or benefit plan that either (1) contains an arbitration or other non-judicial resolution procedure, in which case the provisions of such plan shall apply, or (2) is underwritten by a commercial insurer which decides claims. If either the Company or the Employee has more than one claim against the other, one or more of which is not covered by this Agreement, such claims shall be determined separately in the appropriate forum for resolution of those claims. Nothing in this Agreement shall preclude the parties from agreeing to resolve claims other than Claims covered by this Agreement pursuant to the provisions of this Agreement.

3. <u>Initiation of the Arbitration Process.</u>  To initiate the arbitration process, the aggrieved party must file a written notice of its intention to arbitrate at any office of the American Arbitration Association (the "AAA"), within the time limit established by the applicable statute of limitations. The filing shall be made in duplicate, and each copy shall include a copy of this Agreement. The notice shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; and the remedy sought. The aggrieved party shall also provide a copy of the notice to the other party; such notices to the Company should be directed to its Human Resources department.

|  | **ARBITRATION AGREEMENT** | FORM: HR-17<br>REV: ORIGINAL<br>DATE: 01-01-2017<br>PAGE 2 of 4 |
|---|---|---|

4. <u>Arbitration Procedures.</u>  Arbitrations pursuant to this Agreement shall be conducted in accordance with the procedures set forth in the Employment Arbitration Rules and Mediation Procedures (the "Rules") of the AAA, except where the Rules conflict with this Agreement, in which case the terms of this Agreement shall govern.

5. <u>Neutral Arbitrator.</u>  Any arbitration of disputes shall be conducted by a single neutral arbitrator, experienced in the field of employment law. The arbitrator shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias. The arbitrator shall be appointed from a list of arbitrators provided by the AAA. If the parties fail to agree upon an arbitrator from the provided list, an arbitrator will be appointed according to the alternate strike method set forth in the Rules, wherein each party may strike arbitrators from the list and then rank order the remaining arbitrators, ideally resulting in a mutually agreed upon arbitrator. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the provided list, the AAA shall have the power to make the appointment from among other members of its Employment Dispute Resolution Roster without the submission of additional lists.

6. <u>Date, Time and Place of Arbitration.</u>  The parties agree that any arbitration hearing shall be held in Phoenix, Arizona. The arbitrator shall fix the exact date, time and place of each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule.

7. <u>Discovery.</u>  The parties shall be entitled to engage in reasonable discovery in the form of requests for documents, interrogatories, requests for admission, physical and/or mental examinations and depositions, in order to obtain information necessary to prosecute or defend the claims brought. The arbitrator shall have the authority to order such discovery as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. Any disputes between the parties regarding the nature or scope of discovery shall be resolved by the arbitrator in his or her discretion.

8. <u>Evidence.</u>  The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of the arbitrator and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

    a. An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently. The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

    b. If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

9. <u>Motions.</u>  The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of the or narrow the issues in the case. The arbitrator will have the authority to grant motions dispositive of all or part of any claim.

10. <u>Representation.</u>  Any party may be, but need not be, represented by a person of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties at least ten (10) days prior to the date set for the hearing or conference at which that person is first to appear.



| | ARBITRATION AGREEMENT | FORM: HR-17<br>REV: ORIGINAL<br>DATE: 01-01-2017<br>PAGE 3 of 4 |
|---|---|---|

11. <u>Written Award.</u>  The arbitrator shall issue a written, legally reasoned arbitration decision with findings of fact and conclusions of law and which sets forth the award and basis therefore. The award shall be final, binding and non-appealable. The arbitrator shall have the power to award any type of relief that would be available under applicable state or federal statutory or common law, including punitive damages, injunctive relief, attorneys' fees and costs. Any award may be entered as judgment in any court of competent jurisdiction.

12. <u>Exclusive Remedy.</u>  For Claims covered by this Agreement, arbitration is the parties' exclusive legal remedy. The arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement.

13. <u>Fees and Costs.</u>  The Company will pay the reasonable costs of arbitration including arbitrator expenses. Each party shall pay its own other costs, such as witness fees, filing fees, attorney's fees, or other amounts the party would be required to pay as part of litigating a claim in court.

14. <u>Confidentiality.</u>  The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality.

15. <u>Governing Law.</u>  All arbitrations covered by this Agreement shall be adjudicated in accordance with the Arizona or federal law which would be applied by a United States District Court sitting in Arizona.

16. <u>Enforceability.</u>  This Agreement shall be enforced under the Federal Arbitration Act, 9 U.S.C. §2.

17. <u>Successors and Assigns.</u> This Agreement shall be binding upon and inure to the benefit of all successors and assigns of the Company, whether by way of merger, consolidation, operation of law, assignment, purchase or other acquisition of substantially all of the assets or business of Company and shall only be assignable under the foregoing circumstances. Any such successor or assign shall be included in the term "Company" as used in this Agreement.

18. <u>Modification.</u> This Agreement may not be, and shall not be, modified or amended except by a written instrument signed by both parties hereto.

19. <u>Entire Agreement.</u> This Agreement constitutes the entire Agreement and understanding between the parties hereto concerning the arbitration of disputes, except for any arbitration provision contained in any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written agreement or understanding on the subject. In executing this Agreement, neither party is relying on any representation, oral or written, on the subject of the effect, enforceability or meaning of this Agreement except as specifically set forth in this Agreement.

20. <u>Term and Modification.</u> This Agreement shall survive the employment relationship between the Company and the Employee and shall apply to any covered Claim whether it arises or is asserted during or after termination of the Employee's employment with the Company.

21. <u>Not an Employment Agreement.</u>  This Agreement is not, and shall not be construed to create, any contract of employment, express or implied, nor shall this Agreement be construed in any way to change the status of the Employee from that of at-will employment.

22. <u>Severability</u>.  If any provision of this Agreement is invalid, illegal or unenforceable under present or future laws effective during the term hereof, then it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and it is also the intention of the parties that in lieu of each such provision which is invalid, illegal, or unenforceable, there be added as part of this Agreement, a provision which shall be as similar in terms of such invalid, illegal or unenforceable provisions as may be possible and be valid, legal and enforceable. If this Agreement is declared unenforceable and cannot be administered, interpreted, or modified to be enforceable, the parties agree to waive any right to a jury trial with respect to any dispute to which this Agreement applies.

23. <u>Headings</u>.  The headings and captions contained herein are for convenience of reference only and shall not control or affect the meaning or construction of any provisions hereof.

[Signatures Follow On Next Page]



| | |
|---|---|
| **ARBITRATION AGREEMENT** | FORM: HR-17<br>REV: ORIGINAL<br>DATE: 01-01-2017<br>PAGE 4 of 4 |

EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES THAT IT HAS CAREFULLY READ THIS AGREEMENT, THAT IT UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN EMPLOYEE AND COMPANY RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTIANED IN IT, AND THAT THIS AGREEMENT HAS BEEN ENTERED INTO VOLUNTARILY AND NOT IN RELIANCE ON ANY OTHER PROMISES OR REPRESENTATIONS.

_____ Employee Initial                              _____ Company Initial

EACH PARTY ALSO ACKNOWELDGES THAT IT IS WAIVING THE RIGHT TO A TRIAL OF CLAIMS COVERED BY THIS AGREEMENT.

_____ Employee Initial                              _____ Company Initial

EACH PARTY FURTHER ACKNOWLEDGES THAT IT HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS AVAILED ITSELF FO THAT OPPORTUNITY TO THE EXTENT IT WISHES TO DO SO.

_____ Employee Initial                              _____ Company Initial

_____
Signature of Employee

_____
Printed Name of Employee

_____
Date

SWIFT AIR, LLC

By: _____

_____
Date

315100;blt;23203-0001